1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   KDME, INC., d/b/a/ SEAFORTH BOAT          CASE NO. 05CV199  IEG (AJB)
     RENTALS,
12                                             **MEMORANDUM DECISION AND**
                                  Petitioner,  **ORDER**
13        vs.

14   JANINE BUCCI and SAMANTHA BUCCI,

15                                  Claimants.

16        The above-entitled matter came before the Court for trial without a jury on December 19 and

17   20, 2007.  Daniel E. Kenney, Esq. of Harrington, Foxx, Dubrow, and Canter appeared on behalf of

18   KDME, Inc. d/b/a Seaforth Boat Rentals ("KDME" or "Petitioner").  Kevin F. Quinn, Esq. and Alyson

19   B. Taub, Esq. of Thorsnes, Bartolotta, and McGuire appeared on behalf of Janine and Samantha Bucci

20   ("Claimants").  This memorandum decision constitutes the Court's findings of fact and conclusions

21   of law.

22                                   **Introduction**

23        This is an admiralty action arising out of a recreational boating accident in Mission Bay, San

24   Diego, in which Janine Bucci and Samantha Bucci sustained injury.

25        In a Pretrial Order, which the Court signed on June 7, 2007, the parties admitted to certain facts

26   requiring no proof at trial.  The Court incorporates by reference the facts admitted by the parties and

27   set forth in the Pretrial Order.  The Court's findings of fact are based upon those facts admitted in the

28   Pretrial Order and the testimony and evidence presented at trial.

**Jurisdiction**

This Court has admiralty jurisdiction pursuant to 46 U.S.C. § 181 et seq., 28 U.S.C. § 1333, and Federal Rule of Civil Procedure F.  The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Venue is proper pursuant to 46 U.S.C. § 181 et seq. and Federal Rule of Civil Procedure F(9) because the subject vessel is located in San Diego.

**Findings of Fact**

The Accident

On August 25, 2004, Janine Bucci ("Janine") rented a 16 foot Bayliner and an inner tube from Petitioner KDME, Inc., dba Seaforth Boat Rentals ("KDME") for recreational activity in Mission Bay. Janine was accompanied on the boating trip by Samantha Bucci ("Samantha"), Alexandra Bucci and Kim Doros.

Sometime after leaving the dock, Doros took the helm of the boat while Janine and Samantha attempted to ride the deployed inner tube.  Because the towline of the inner tube was deployed incorrectly, it wedged in the outboard motor of the boat and locked the steering mechanism.  As a result, the boat made a sharp left turn, striking Janine and Samantha.  After being knocked off the inner tube and while in the water, Janine was also impacted by the spinning propeller of the boat.

Janine suffered fractures to her skull, teeth, and jaw, and lacerations to her neck, shoulder, and arm.  Immediately after the accident, she was taken to the University of California San Diego ("USCD") Medical Center and admitted to the trauma bay for her various injuries.  Janine spent six days in the hospital recovering from the accident and resulting surgery to treat and close her neck, shoulder, head, and hand injuries before being discharged and allowed to return to New York with her family.

Samantha's injuries were not as extensive, but she suffered head contusions and injuries to her left arm and leg.  She was taken to University of San Diego Hospital in Hillcrest where she was treated for pain on her left side and subjected to additional tests.  Samantha was discharged the next day, and spent a few days recuperating before traveling back home to New York.  Samantha did not require extensive medical care upon her return from San Diego.

//

1    Janine Returns Home and To School

2        After returning home, Janine stayed in bed most of the time, except for appointments with

3    doctors continuing treatment for her injuries. During September and October of 2004, Janine attended

4    numerous appointments to, among other things, remove sutures from her wounds, treat and manage

5    her jaw pain, give x-rays, perform physical rehabilitation, and treat neck and back pain associated with

6    her injuries. During this time period, she was referred to Dr. Patrick Stubgen for a consultation related

7    to her shoulder weakness. At around the same time, Janine returned to school at the University of

8    Rhode Island in the fall of 2004 with a reduced course load.

9        Back at college, Janine achieved grades comparable, though slightly lower than her pre-

10   accident freshman year. She also held a leadership position in her sorority, serving as Vice-President.

11       Despite these positive signs, Janine testified at trial that she felt compelled to discontinue her

12   studies at Rhode Island before her junior year. She explained that it was becoming too difficult to

13   continue the numerous required trips back home for doctors appointments related to the treatment of

14   her injuries. She transferred to a college near her parents home for her junior year and completed her

15   studies there in December 2007.

16       At trial, Janine described her current condition now nearly three and one-half years following

17   the accident. She reported continuing physical pain in the form of headaches and neck pain. She

18   testified about being unable to exercise as she had in the past, because she cannot do sit-ups or handle

19   weights greater than one or two pound in weight. She also described feeling anxious and afraid,

20   especially with regard to the safety of her family. She testified that she experiences great anxiety

21   when any of her brothers leave the house. She also explained that she has great difficulty sleeping and

22   is disturbed every night by nightmares involving death to her friends and family which consistently

23   wake her from sleep between 3 a.m. and 5 a.m.

24       Janine also displayed physical scars from the accident. She has a prominent scar on her left

25   shoulder blade, another on top of her shoulder, and others appear along the length of her left upper arm

26   and on her neck. She also has scars on both hands. In addition to scarring, Janine exhibits a concave

27   depression in her left shoulder. She testified about her feelings of self-consciousness regarding the

28   scars and the concave depression in her shoulder and she has sought the services of a plastic surgeon,

Dr. Robert M. Tornambe, M.D. to help reform and rehabilitate the appearance of her arm.

Currently, Janine works two different jobs for a total of approximately 25 total hours per week. She serves as a sales associate at a female clothing store, working approximately 16 hours per week. She also works at Avon products, alongside her mother, where she spends approximately 8-9 hours a week. While she explained that she is forced to take time from work on occasion for doctor's appointments, she reported no negative reviews of her job performance.

Janine's Psychological Treatment

In 2005, Janine's neurologist, Dr. Stubgen, referred her to clinical neuropsychologist, Dr. Christina Morrison, for attention and memory complaints. Janine met Dr. Morrison on July 5, 2005. After meeting Janine and talking with her about her symptoms, Dr. Morrison administered several standard psychological tests to assess general intellectual functioning. At trial, Dr. Morrison testified regarding the results of that testing. She noted that Janine performed poorly on measures that were highly dependent on visual spatial processing skills and also performed poorly on measures involving problem solving. In addition, based on a personal interview, Dr. Morrison identified significant symptoms of a mood disorder. Putting these elements together, Dr. Morrison found Janine met criteria for post-traumatic stress disorder ("PTSD") and an eating disorder.

Dr. Morrison noted she was unable to determine whether the symptoms she observed had been caused by a mild traumatic brain injury or were instead secondary effects from a mood disorder. In either case, however, Dr. Morrison concluded the boat accident was the cause of Janine's difficulties because the boat accident either caused actual physical injury to her brain which would explain the cognitive difficulties or the accident caused the mood disorder which in turn had secondary cognitive effects.

After her visit with Dr. Morrison, Janine sought psychotherapy from Dr. Steven Baskin, Ph.D. Those sessions did not continue after the initial encounter because, according to Janine, she did not connect with Dr. Baskin and felt uncomfortable with him. After speaking with Leslie Garwood, a counselor at the University of Rhode Island, Janine was referred to her present psychiatrist, Dr. Joyce Z. Pere, M.D. Janine began treating with Dr. Pere on September 11, 2007 and continued to see Dr. Pere on a bi-weekly basis until the time of trial. Janine expressed her feeling at trial that Dr. Pere had

1   really helped her in dealing with mood problems.

2       About two months after beginning her session with Dr. Pere, Janine returned to Dr. Morrison

3   for a second evaluation based on her continuing complaints of memory and attention deficits.  In

4   particular, Janine reported difficulty reading and focusing on her studies.

5       At the conclusion of this second round of tests, Dr. Morrison found that the visual spatial

6   processing deficits present in the 2005 testing had remitted, but that Janine continued to demonstrate

7   poor problem solving.  Further, in terms of mood, Dr. Morrison described Janine as "symptomatic,"

8   with depression and anxiety at the same levels as back in 2005.  Dr. Morrison explained that Janine's

9   better performance on the spatial testing in the second session was likely attributable to time spent

10  healing from the mild brain injury she received during the accident.  However, her continuing mood

11  difficulties were likely causing interference with Janine's efficient use of her cognitive skills.  Dr.

12  Morrison stated that Janine continues to meet the criteria for PTSD and she recommended a treatment

13  of aggressive psychotherapy and medication for mood.

14                                  **Procedural History**

15      On February 2, 2005, KDME filed a complaint for exoneration or limitation of liability.  On

16  May 31, 2005, Claimants filed a claim.  On August 15, 2005, by leave of court, Claimants filed a first

17  amended claim alleging that KDME acted with gross negligence.

18      A bench trial on the issue of liability was conducted on July 10, 11, and 12, 2007.  In an order

19  dated August 14, 2007, this Court denied Petitioner's petition for limitation of liability and

20  apportioned 100% of the fault for claimants' injuries to Petitioner.  The Court's decision was based

21  on its conclusion that KDME failed to properly instruct Claimants as to the proper deployment of the

22  inner tube.

23      A bench trial on damages was held on December 19, and 20, 2007.

24                                      **Analysis**

25      Having found KDME 100% at fault for Janine and Samantha's injuries, the only remaining

26  issue is damages.  There are two potential sources of specific economic detriment suffered by Janine

27  and Samantha: past medical expenses and future medical expenses.  In addition, general damages may

28  be available to compensate Janine and Samantha for their pain and suffering.

1    1.      Economic or Special Damages

2              a.     Past Medical Expenses

3    "To recover damages for past medical expenses, Plaintiff must prove the reasonable cost of

4    reasonably necessary medical care that she received." Hanif v. Housing Authority, 200 Cal.App.3d

5    635 (1988).

6    At trial, Claimants introduced past medical bills totaling $120,773.09 for Janine and

7    $17,442.28 for Samantha.

8    KDME presented no evidence challenging either of these figures at trial.[1]

9    The Court finds that Janine is entitled to $120,773.09 for past medical bills and that Samantha

10   is entitled to $17,442.28 for past medical bills.

11             b.     Future Medical Expenses

12   On the issue of future medical damages, Claimants asserted $469,252 on behalf of Janine.

13   This figure included $22,055.00 for future orthopedic surgery, $111,694.00 claimed for future

14   psychotherapy, $155,417.00 in future medication, $89,852.00 for Second, Third, and Fourth plastic

15   surgeries in order to reduce the appearance of scarring, and $90,234 for cosmetic laser treatment.[2]

16   Samantha did not claim future medical expenses.

17   KDME challenged the claimed costs for future psychotherapy, future medication, and the

18   future scar reducing procedures. These costs are discussed in turn. The Court does not find support

19   in the evidence for the figure related to future orthopedic surgery and accordingly declines to award

20   compensation for future orthopedic surgery.

21   .          i.     Future Psychotherapy

22   Janine's current psychiatrist, Dr. Joyce Pere asserted that Janine would be best served by

23   weekly therapy sessions which would continue for the next 7 to 10 years. Thus, Janine's estimate of

24   future medical costs asks for 8.5 years of continued psychotherapy for Janine. Those sessions would

25   

26   [1]KDME's Pretrial brief claims Janine's recovery for past medical bills should be reduced to
     reflect the amount actually paid by Janine and insurance providers as opposed to the total medical
     charge. However, KDME introduced no evidence on this point at trial. The record supports the totals
27   asserted by the Claimants.

28   [2]Claimant's Pretrial brief asserted $659,910.00 in future medical expenses but their exhibits
     at trial supports only $469,252.

05cv199

be at a cost of $275.00 per session.  Dr. Pere explained that Janine is not functioning well in terms of her ability to concentrate, work, and develop relationships because her mood is persistently low.  She asserted that significant amounts of psychotherapy provided the best chance for Janine to work through her mood disorder.  Dr. Morrison's opinion also came down in favor of aggressive psychotherapy although Dr. Morrison did not specify the length of time such therapy should continue.

KDME argued against an award for future therapy and in support offered the testimony of Dr. Mark Kalish, M.D., a professor at the University of California San Diego Department of Psychiatry. Dr. Kalish performed a psychiatric evaluation of Janine in December of 2007 and also analyzed the raw data from the testing performed by Dr. Morrison.

Dr. Kalish opined that while Janine had experienced a period of anxiety and depression attributable to the accident, she does not presently suffer from PTSD.  Dr. Kalish conceded that accepting Janine's subjective complaints, she fits the PTSD profile, however, he asserted that the objective data did not support the diagnosis.  In particular, Dr. Kalish noted that six weeks after the accident, Janine went back to school and performed essentially the same as she had previously.  Dr. Kalish found it significant that Janine was able to return to her work and school environment without much problem, indicating success in planning, relating to people, and maintaining appropriate levels of attention and focus—all which would be atypical of someone genuinely suffering from PTSD.  In particular, Kalish doubted Janine's reports of sleeping problems every night, noting that such sleep disruption would manifest itself more obviously in Janine's performance.

Further, Kalish disputed the relationship between Janine's mood and related cognitive disorders and the boating accident.  He noted that many of Janine's reports, such as various obsessive behaviors, her fear of fire, and her 9/11 dreams, had no discernable connection to the boating accident. He also found evidence in past medical records of headaches, weight problems, and other body image problems which preceded the accident, indicating the boat accident did not cause those issues.  He suggested that Janine's heightened anxiety and depression in 2007 where not from a boating accident in 2004, but brought about either by several intervening events—including the end of a romantic relationship, the death of her grandfather, and the death of a close family friend—or simply fabricated in light of the favorable liability judgment in August 2007.  Dr. Kalish suggested that Janine's

1   decision to seek consistent and regular psychotherapy in September of 2007, after the

2   judgment—where she had failed to do so previously—cast doubt on the necessity of such treatment.

3       Unlike Dr. Pere, who described Janine's prognosis as guarded and poor, Dr. Kalish's

4   concluded that Janine's prognosis is good given her supportive family, her average intelligence, and

5   her ability thus far to function well at school and at work.

6                                  1.      Analysis

7       The Court finds Janine suffers from a significant mood disorder.  Dr. Morrison's testimony,

8   which attributed Janine's mood disorder to the boating accident, is credible.  The trauma of being hit

9   by a motor boat and cut by its propeller, combined with the subsequent hospital stay, follow up

10  examinations, physical therapy, and permanent scarring undoubtedly contributed to Janine's increased

11  anxiety and low mood.

12      The Court further finds psychotherapy to be an appropriate treatment for Janine's condition.

13  Even Dr. Kalish conceded that in light of the subjective symptoms, a diagnosis of PTSD was plausible

14  and that at least one year of psychotherapy would be appropriate in such a circumstance.  However,

15  the Court declines to adopt Dr. Pere's conclusion that 7 to 10 years of psychotherapy is medically

16  necessary.  Janine's performance at school and work following her accident indicate a condition that

17  is less than severe.  The Court finds three years of weekly psychotherapy to be reasonable and

18  appropriate treatment at a cost of $275 per session.

19                                 ii.      Future Medication

20      Dr. Pere also testified about the following recommended dosages and prices for medications

21  which should accompany Janine's psychotherapy:

22          (1) Cymbalta - Dr. Pere testified in her video deposition that Janine requires
            anywhere between 90 and 150 milligrams of Cymbalta per day.  Dr. Pere testified that
23          a supply of 60 milligram tablets would run $80 per month but corrected that figure in
            a November 28, 2007 letter in which she reported that "a month's supply of two tables
24          of 60[mg] tablets is $325 . . . ."

25          (2) Ambien - Dr. Pere testified that Janine requires $150 per month for
            Ambien CR but did specify the monthly dosage.
26
    While Janine testified she takes nine different drugs, the Court finds that only (1) Cymbalta, which
27
    Dr. Pere says was prescribed for Janine's pain, depression, and anxiety, and (2) Ambien, which treats
28
    Janine's bouts of insomnia are necessary for future treatment.  Dr. Pere's testimony regarding the

1  future need for additional antidepressant or mood stabilizing drugs was too speculative to support any

2  additional award.

3       Dr. Kalish, while objecting to the total amount of medication currently taken by Janine,

4  registered no dissent towards the need for anti-depressants to accompany psychotherapy.

5       In light of the evidence, the Court finds three years of future medication to address mood and

6  sleep issues is reasonable and appropriate in light of the evidence.  Because Dr. Pere stated that two

7  60 milligram pills would be the appropriate dosage for Janine, the Court determines a $325 award per

8  month appropriate for Cymbalta for a period of 36 months.  The Court also accepts Dr. Pere's

9  assertion that $150 is needed for the monthly Ambien prescription, also for a period of 36 months.

10            iii.    Future Plastic Surgery

11       On the issue of future plastic surgery for scar revision, Janine presented the testimony of

12  plastic surgeon, Dr. Robert M. Tornambe, M.D.  Dr. Tornambe performed surgery on Janine April 12,

13  2006, in an effort to decrease the appearance of the scarring and to improve the shape of Janine's

14  shoulder.

15       Dr. Tornambe testified that a second surgery on Janine's shoulder would be required to

16  transplant healthy skin to try to remove the scar on Janine's shoulder and fix the concave deformity.

17  Dr. Tornambe also testified that a third surgery would be essential because there was no chance that

18  he could completely remove the scar tissue in the second surgery.  He testified that the total cost of

19  these surgeries would be $30,000 each. Beyond that, Dr. Tornambe was much more cautious, saying

20  that Janine's healing would be the main consideration as to whether any future surgeries would be

21  performed.  He asserted that based on his experience with Janine's healing after the first operation,

22  there was a 70% chance this fourth procedure would be necessary.

23       Finally, Dr. Tornambe testified that while further surgeries beyond a fourth would be

24  unnecessary, he recommended laser resurfacing, which would serve to further reduce the color and

25  thus the visibility of scarring.  Dr. Tornambe estimated that such treatment would cost approximately

26  $40,000 per session and approximately $100,000 total in Janine's case.  This testimony differs slightly

27  from his written report in which he say s "the series of laser treatments that will be required carry an

28  estimated cost of $10,000 to $20,000" and later says the "multiple laser treatments will be required

1    at a cost of approximately $40,000." Dr. Tornambe's report indicated laser resurfacing would benefit

2    Janine even assuming she obtains the best possible surgical outcome.

3                                        1.        Analysis

4        KDME offered no testimony to rebut Dr. Tornambe. Based on his testimony, the Court finds

5    that the second and third surgeries for scar revision and repair of the concave depression at a cost of

6    $30,000 each are necessary to reduce the visible scarring and concave depression on Janine's arm.

7    The Court finds the prospect of any future surgeries too speculative.

8        The Court further concludes $40,000 should be awarded for laser treatments in order to reduce

9    the visibility of Janine's scarring. The Courts finds no support for Dr. Tornambe's claim at trial that

10   the cost of the laser treatments would reach $100,000.

11   **2.    General Damages**

12       Finally, the Court turns to the issue of general damages for pain and suffering on the part of

13   Claimants. Any amount awarded for pain and suffering depends to a great extent on the trial court's

14   observation of the plaintiff and its subjective determination of the amount needed to achieve full

15   compensation. Hyde v. Chevron U..S., Inc., 697 F.2d 614, 632 (5th Cir. 1983).

16                                        a.        Janine

17       As a result of the accident, Janine sustained multiple traumatic injuries. She remained in the

18   hospital for six days and has had to undergo over 100 separate doctor visits and other appointments

19   to aid in her recovery. At trial, Janine and her family testified about the difficulty Janine has faced

20   in many areas of her daily life since the accident, including persistent nightmares with themes of

21   death, the disruption in her schooling, her persistent low mood and anxiety, and problems with

22   memory and concentration. While Janine may have been more susceptible to encountering difficultly

23   in recovering from the trauma of this accident than another young woman, it is an oft repeated maxim

24   in tort law that the tortfeasor takes the plaintiff as he finds her.

25       After considering the extent of Janine's injuries, her past and future physical pain and suffering

26   and mental anguish, disfigurement, the Court assesses general damages in favor of Janine Bucci in an

27   amount equal to three times the calculated past and future medical expenses: 842,319.00.

28   //

b.      Samantha

Samantha's injuries were not as severe as Janine but her testimony at trial and that of her mother establishes that she suffered both physical pain and lasting trauma as a result of the accident. Samantha testified about the horror of seeing her cousin Janine in a pool of blood.  She explained that she is now nervous about going in the water and that while she does not bear the same permanent scars as Janine, she still hurts emotionally and is effected deeply by the experience.  Debbie Bucci, Samantha's mother, testified about how her daughter returned home from the accident confused and troubled.  In light of the evidence presented at trial, the Court finds an award of three times the past medical expenses appropriate to achieve compensation.  Accordingly, Samantha Bucci is awarded $52,326.74.00 in general damages.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

05cv199

**Conclusion**

The Court enters judgment in favor of Janine Bucci in the following amounts:

Past Medical..................................................................................$120,773.00

Future Medical.............................................................................$160,000.00

      Includes:

      Three Years Psychotherapy (156 weeks * $275) =   $42,900.00

      Medication                                         $17,100

          Cymbalta, 36 months at $325 = $11,700

          Ambien, 36 months at $150 = $5,400

      Future Scar Revision                               $60,000.00

      Laser Treatment                                    $40,000.00

Total Medical Damages...................................................................$280,773.00

General Damages ($280,773.00 * 3)..............................................$842,319.00

Total.........................................................................................................$1,123,092.00

The Court enters judgment in favor of Samantha Bucci in the following amounts

Past Medical....................................................................................$17,442.28

General Damages...............................................................................$52,326.84

Total...............................................................................................................$69,769.12

**DATED:  January 24, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**